Good morning. May it please the court. John Leschak on behalf of the petitioner, Ersin Doyduk, who is also present in court with me this morning, counsel reserves five minutes for rebuttal. Petitioner argues that the immigration judge, the IJ, in this case, erred by considering the records from his 2011 arrest, as well as the testimony of the investigating detective, because the petitioner was not only never convicted of any charge, but also all charges were dismissed and subsequently expunged under the Pennsylvania Criminal History Records Information Act, or the CHRIA, or CHIRA, and the CHIRA precludes IJs from considering dismissed and expunged criminal charges. Federal common law has actually already recognized a privilege for records expunged under the CHIRA as protected matter under federal rule, civil procedure 45 D3A. I refer the court to the precedent decision from the Eastern District in Benedict v. McMahon, where the district court granted the defendant's motion for protective order for expunged records, noting that federal courts should, quote, not foil the intent of the Pennsylvania legislature by interfering to revive or retrieve documents that as a legal matter do not exist. Well, that's a district court case, right? Yes, Your Honor. It is a district court case, but... All right. I opened the door. Go ahead. But... Yes, Your Honor. So it's a district court case, but a similar analysis was also conducted by the third circuit in WMT Thompson Co. v. GNC, which is the 1982 third circuit precedent decision. In that case, the court noted that in civil proceedings, if the state law supplies the rule of decision for a claim or defense, then, quote, the privilege of a witness shall be determined in accordance with state law. And that's... But here we're dealing with the Immigration Service. We're dealing with a test given throughout the country. Don't we want a national standard rather than a state by state standard? Because won't there be problems if people believe, if they're living in California, that they'll be treated more liberally in getting the right to stay in the country than if they live in, for instance, California? So don't we want a national standard? So, Your Honor, actually, there's actually a long history of the immigration authorities deferring to determinations by state authorities in regard... That's the point. That's the point of the question. Yes. So we would submit that on this point, and actually there's a number of areas in the INA where the law, the structure of the INA, specifically directs immigration authorities to defer to determinations made by state courts. And this is one particular case where we're arguing that the INA should also be interpreted as deferring to the determination... You're missing the point, right? I mean, the point is, let's say 25 states say you can't, and 25 states say you do. So that would mean it's the serendipity or the fortuity of being in one of these states as opposed to one of these states that'll determine whether you get to stay. Right? That's the problem. So the question is, shouldn't you think of this as there's a, whether it's the federal common law or not, shouldn't you think of it as we should have a unified federal approach to this in which whether you're here or you're there, you'll be treated in the same way? That's the question. So, and I understand the court's question. And while we're arguing that, no, that this is not part of the INA, which would mandate a unified or national standard. And we're also arguing that there are principles of federalism that are inherent in this type of circumstance, which have been recognized by the third circuit and other cases, specifically Pinho versus Gonzalez is a very similar situation. What happened in Pinho, and this was, Pinho was a pickering question because in that case, the, the immigrant had a criminal conviction and he had the criminal conviction vacated by what's called a PCR or post-conviction relief petition, which was granted by a state court. But when he applied for relief, the relief was allegedly denied as a matter of discretion. The judge also found that the conviction remained a conviction under pickering because the judge harbored a suspicion that the trial court judge had granted the PCR petition for ulterior motives and the third circuit rejected this inquisition. And it held that state courts are the primary and ultimate authorities on the meaning of state law. And therefore principles of federalism and comedy compelled the third circuit to conclude in that case that neither IJs nor the BIA should be allowed to second guess or go behind a state court determination to reach their own conclusion on the matter. And that's, and we are urging that Pinho, Pinho is it really... It was a matter of a state conviction, right? There was a, there was a conviction in Pinho, which was vacated via PCR. Okay. But this is not a question of whether there was a state conviction. This is a question of whether under federal standards, this person should stay in the country. Yes, Your Honor. There, so there is a question of whether or not the person should stay in the country under the federal standards. But I think it's also very important to note that in this case, we're not dealing with a conviction. And I think that's something that's significant because we would argue that the arguments being made in this case are not preempted by Roldan or Pickering because those decisions deal with convictions, which are either expunged or vacated. And I know that this was a question that came up recently before the third circuit in the Kahn decision, which Judge Mady, you were a part of the Kahn decision as well. It was a case that was decided before you. And Kahn didn't address the issue, but we are arguing that there can be a distinction made between, I understand that under Roldan, it says that if you have a conviction and it's subsequently expunged or vacated for a rehabilitative purpose, it's still considered a conviction under the Immigration Act. Whereas in this case, there was never any conviction. The petitioner never pled guilty. It was the charges were withdrawn, dismissed, and then subsequently they were dismissed. So what we're saying is that to allow evidence of a dismissed and expunged case into the proceeding would essentially allow the immigration judge to relitigate the underlying criminal charges. And this is problematic for a number of reasons. Number one, the IJs, they do not have the power to try or retry a criminal case. But the IJ here had all the relevant facts. The IJ heard from the officer, had statements from the witnesses that didn't conflict in their recitation to the officer initially, and then obviously did conflict in the written statements. Everything was there for a decision to be made. So what exactly is the standard that you're hoping that we will apply? Absolutely nothing short of convictions, because Araguin doesn't say that. And some of the other cases before us don't say that. Araguin, in fact, says it only applies if there is no corroboration. But here there was a lot of corroboration. We do not dispute that there were documents provided in corroboration, both the arrest report, the investigative documents, the photos. But there was corroboration of what happened in the incident. Correct, Your Honor. Corroboration of Mr. Duyduck saying to the police officer at one point, I cut her. Well, I think what I what I think is most especially problematic in this case is that here the IJ essentially found the petitioner guilty, that the IJ, she wrote in her decision, quote, The evidence in the record strongly suggests that the petitioner was his then girlfriend, Nadezhda Filippova. And this this is a conclusion. This is essentially this is a criminal mini trial essentially occurring in a federal. You're not saying that's outside the ambit of what the IJ could was permitted to do based on the authority the IJ has. We're saying that it that the court ought to rule that this should not be permitted because letting an IJ re-adjudicate guilt or innocence puts the petitioner through essentially is not adjudicating guilt or innocence under the laws of Pennsylvania. The IJ is determining whether the facts support whether this person should stay in the country or not. And here the IJ is saying on the basis of of the corroborating evidence that this victim didn't appear in court is because the only reason that the that Mr. Dudek was not convicted was because the victim refused to appear in court. That is not a determination of whether there was guilt in the Pennsylvania offense is a determination of whether this person is consumed, considered to have the proper character to be permitted to stay in the United States. I understand that that's the way that the immigration judge in her decision attempted to characterize her reasoning. But what we would also argue is that this is also problematic because of concerns for federalism, because we're also talking about a state court judgment under the CHRIA that said that these records shall not be further disseminated. Unless there's corroboration. Is what Arakeen says. And here there was corroboration. Correct, the documents which but our issue is that the documents that were providing the corroboration were also expunged. So there's a conflict with a state court decision. So it becomes a question of the state law versus federal law and whether or not the state privilege is going to be respected and acknowledged in the federal proceeding. Where it becomes problematic is that this this kind of exception could essentially swallow the rule so that there could be it would be opening the floodgates because there would be no finality to any state court criminal decision since the IJ would always be able to essentially re-litigate what had really happened. The IJ is not making a criminal determination. There's no re-litigation. The other thing is the IJ is empowered and must in fact find determine whether the applicant has engaged in or has bad character or undesirability as a potential permanent resident in the country. If that's what the IJ is to determine, you're asking us based on the fortuity of whether something is expunged or not, right, because we started off with some states it would be, some states it wouldn't be. So if I'm in a state where it's expunged, I commit an act, it's expunged. So now you want the rule to be whether it speaks to bad character or unreliability to be a permanent resident or not, don't take it into account. Whereas if I do it in the next state over, Delaware, the very same act, right, in that instance, it can be taken into account as bad character and unreliability. That can't possibly be a result that we can endorse. Fortuity and serendipity doesn't lead to a good way to proceed. Well, Your Honor, in response to the court's concern, what we're arguing is that this is something that's actually already in effect in other parts of the INA, so it's not precedent. For example, the court may be familiar with what is known as Special Immigrant Juvenile Status or SIJS. That's another type of situation where the INA is actually explicitly directing the immigration authorities to defer to the state court determination as to custody, abandonment or abuse of a child. And there's precedent that says that the immigration authorities are not allowed to go behind and reanalyze whether custody should have been granted or whether a finding of abuse, abandonment or neglect should have been made by the family court, which is a state, you know, the state court. So it's the INA is directly in that situation saying we have we have VIA precedent and Aroquin saying that you can consider it if there's corroboration. Your Honor, we have corroboration in Galecki, is that the name that you can consider it if there's corroboration. And here we have a lot of corroboration. So, Your Honor, we would submit that I understand that Aroquin and Galecki-Tolosa both mentioned that it should not be considered, you know, absent corroboration. And in this case, there was corroboration. But the issue in this case is that the documents which provided the corroboration were also expired. No, it was the witnesses who provided the corroboration, wasn't the documents. It was a police officer who testified. It was a friend who testified. So the friend, Mr. Mamet-Coxon, he did not actually testify in the merits proceeding. There was a subpoena issued for him, but he did not comply with the subpoena. And he provided a written statement, which was provided by trial counsel in the opposition. But the officer provided what the officer represented as a contemporaneous recitation of what I don't, I'm sorry, I don't have the last name, Murat. I don't mean to be disrespectful, but let's just call him Murat for the moment. Murat told the officer on the day in question, right? So it's clear that all of the facts were for them at that time. But let me ask you a question. So here, an act happens, there are witnesses to it, there's an arrest, there's an expungement. Suppose it was an act happens, there's no arrest and no expungement. So in one case where the same thing happens, there happens to be an arrest, we should not take that into account for bad character and unreliability to be a very same act happens with no arrest, but that should be taken into account. So the serendipity of an arrest and expungement should allow one person to get a pass and the other person doesn't go any further in the consideration for permanent residency. That doesn't seem to make sense. Well, Your Honor, this is a situation that's already been happening and continues to happen. The INA also depends on the state dispositions for the criminal convictions themselves. And each state, the adoption and implementation and enforcement of criminal law is an area that is traditionally reserved to the state police powers. And again, this becomes a question of federalism in the Tenth Amendment because the states are the ones who are devising their criminal laws and they decide. So something that would be a crime in one state is not a crime in another state. Something that would be a felony in one state is maybe only a misdemeanor or not a felony in another state. And so there's already the serendipity built into the system. And what I would respectfully submit to the court is regardless of whether or not we have a federal immigration policy, it is the system that we have that's an axiom of our government. Yeah, we're not talking about federalism. We can have a class about that some other time. That's not what we're talking about here. We're talking about how we should think about the application of a standard here. We have a case, Araglan's a case that we can take into consideration. There are other cases that speak to this issue of what may be and what may not be taken into account. We hear you on the expungement. The question is, when you have corroboration, I guess, I guess the bottom line is I get your point. I understand. Thank you. OK, thanks so much. Thank you. Thank you. What's the standard we should apply as far as trying to consider line drawing? Obviously, the line that your adversary wants to draw is expungements, a hard line. If it's if it's expunged, no consideration. Presumably, if it's not expunged, I'm sure it would be another argument. But for these purposes, you may consider it. How should we consider thinking about this in a non-conviction context? May it please the court. I'm Jonathan Robbins here on behalf of the attorney general. The line has already been drawn when it comes to evidence in immigration proceedings, Your Honor. The petitioner's argument is essentially relying on federal rules of evidence, federal rules about quashing a subpoena, things of that nature. It's well established and commonly recognized that when it comes to evidence in immigration proceedings, the federal rules of evidence don't apply. Rather, what applies is the test as to whether the evidence is probative and fundamentally fair. So the immigration judge in this case found that the evidence was obviously probative. As Your Honors have already pointed out, the evidence in question here is probative as to the petitioner's desirability as a candidate for lawful permanent residence. And the immigration judge also pointed out that the evidence in this case was fundamentally fair because the petitioner had a fair opportunity to cross-examine the preparer of the arrest records because he had an opportunity to generally rebut what was in those records. Now, that means the rules are much more lax in immigration proceedings. That's true. Far more lax than they are in district court proceedings. But that usually works to the benefit of the non-citizens in these cases. You wouldn't be able to establish an asylum claim unless you could rely on hearsay, right, and things like that. So the rules are just very different. And so all of the rules that he's relying on simply don't apply. So let's start at the beginning. So when we're talking about adjustment of status, we're talking about a form of relief that is indisputably discretionary. The statute is very clear. It says the attorney general may, in his discretion, grant this form of relief. Now, what's notable about the statute is the statute does not cabin the attorney general's discretion in any way. It doesn't provide a list of things that have to be considered or that cannot be considered. And the case law, with respect to the board, both in the Aragon case and a number of other cases, as well as many circuit cases, have explained that the immigration judge is permitted to consider evidence of prior bad conduct, conduct that would reflect unfavorably on somebody's candidacy for lawful permanent residency. And so that's a very broad range of things that the immigration judge can consider. I would argue that he can consider essentially anything, anything that basically passes constitutional muster. Obviously, he can't discriminate based on race or something like that. How should we think as far as the standard of review of this, of the corroboration? Well, really what that's getting to is the weight of the evidence. So it's important to understand that when we're talking about adjustment of status, there's looming, hovering over everything is the jurisdictional bar at Section 1252A2B. The court is not permitted to interfere with the discretionary analysis or the weighing of different factors. What Aragon in those cases, Aragon, let's take Aragon, for example, in Aragon, the court, the board was ultimately found that it wasn't appropriate to rely on the uncorroborated reports in that case because of the specific circumstances of that case. There was a credible refutation of what was in the reports. They were uncorroborated. So the board felt, well, in this case, it's too flimsy of evidence to rely upon for us to do that. But that's getting to the weight that they give the evidence, right? They found that it was not appropriate to give weight to the evidence. And this court, under the jurisdictional bar, can't interfere with decisions by the agency about the weight to give evidence. But I'm coming in from Pennsylvania and saying, look, we have a law in Pennsylvania that this was expunged. It doesn't exist anymore. Because it no longer exists, you can't look at it. Well, Judge Greenaway, I think, alluded to this in his questioning of my colleague. The expungement issue is really a red herring. You can expunge a conviction, you can expunge records of arrest, but you cannot expunge conduct. Conduct is what is at issue here. The immigration judge is allowed to look at the conduct to determine whether or not an individual is a suitable or a favorable candidate for lawful permanent residency. And that's what the petitioner can't get away from. When Judge Greenaway asked about the situation, well, what if he had never been arrested at all? And what if nothing had ever come of it? The immigration judge would still be permitted to inquire about the facts surrounding the circumstances of this event because it's plainly relevant to what is necessary to the discretionary analysis. And so I would also point out, so when petitioner applies for adjustment of status in the adjustment of status application itself, in fact, you can look at this on page 738 of the record. After the application asks for the pertinent biographic information and the personal information, the very first thing it asks after that section are things that would make somebody not a good candidate for a positive exercise of discretion. It asks, quote, Have you ever, and the word ever is in bold and all caps, ever in or outside the United States been arrested, cited, charged, indicted, convicted, fined, imprisoned for breaking or violating any law or ordinance excluding traffic violations? So when the petitioner submitted his application here, he submitted the evidence of his criminal conviction because at the time it had not yet been expunged. So the notion that these expunged records would have changed the calculus here really isn't accurate. The immigration judge was aware because he had notified them in his application that there was a potential event that was going to be pertinent as to the exercise of discretion. And then, of course, and I would also point out that when the expungement didn't occur until while proceedings were ongoing here. So when DHS subpoenaed the records, it wasn't a violation of Pennsylvania law. So essentially what the petitioner is asking here is for, I guess, all these documents that have been in proceedings to, well, I guess DHS did submit the documents after the expungement technically. So they issued the subpoena beforehand, but the documents didn't come until after the expungement. But the expungement is really a red herring because at the end of the day, the application was going to put the agency on notice of the conduct at issue. And the conduct is what matters when it comes to a form of discretionary relief. Right. And the case law we've I mean, the government has cited to many, many cases that support the notion that the immigration judge is permitted to consider that conduct, regardless of whether the rules of evidence apply in this hearing. No one say this should not have been entered as a matter of law, that this should not have been considered because that's not discretionary, is it? I mean, if there is a law that says it just doesn't exist anymore, you can't look at it. Isn't that a question, a legal question rather than the discretionary question? Well, what the petitioners argue, well, I mean, to the extent that he's arguing that the board failed to follow its own precedent, that would be a question of law to the extent that he's arguing that board precedent, that the board failed to follow its own precedent, that I've always understood to be more of an abuse of discretion. So that I don't know necessarily would fall outside the jurisdiction, the jurisdictional bar scope. But as far as there's no rule that says that the agency can't accept this evidence. Again, the federal rules of evidence do not apply in immigration proceedings. The test is, is it probative and fundamentally fair? That is the analysis that the immigration judge went through in assessing whether he was going to consider that in combination with the fact that he pointed to a number of cases that supported his, excuse me, supported her conclusion in that regard. So one of the cases that the immigration judge cited was the Suleiman case. Now, obviously, that's an unpublished decision by this court, so it's not binding. But the immigration judge did find it persuasive because so many of the aspects of that case are similar. It was a domestic violence issue. The victim there had a restraining order against the assailant, even though there was no conviction. Again, your Honor has already pointed out, the petitioner in this case explained, admitted really, that the reason that there was no conviction was because the victim refused to cooperate. He, in fact, testified that his defense counsel told the applicant not to show up three times and that the case would be dismissed, and that's the reason the case was dismissed. But in terms of, I mean, I don't see how the Pennsylvania law can order an immigration judge to, I guess, destroy what's already in the proceedings, right? They were going to be on notice of the conduct because of what's required in applying for adjustment of status. If you apply to the federal government, to the attorney general, and ask for him to can ask whatever they want in terms of assessing what's going to be involved in the discretionary analysis. I mean, again, the statute does not cabin this. What petitioner is asking for is something really extraordinary. He's asking this court to impose a rule about what the attorney general may consider about somebody's past prior bad conduct and to essentially be forced to ignore that conduct. That's not supported by anything in the statute. It's not supported by anything in the regulation. And contrary to what the petitioner asserts in his brief, it's not supported by board precedent either. Again, your honors have already distinguished the matter of a Aguirre-Rodriguez. That was a case that involved uncorroborated reports. That's plainly not the case here. We have ample corroboration. We also have the testimony of petitioner, which was found to be not credible. So you have that adverse inference as well. Yes. There's one question I had that arose from your answer that I just want to get clear in my head. So there's a question of that arises from Aragon. I mentioned it earlier just in passing, but corroboration. Right. So you can technically have a situation that could come before us where they're arguing there's absolutely no corroboration, that that is absolute error. Is your position that that is not? I understood your argument about weight earlier, but is your position that that is not a quest, a mixed question of fact of law that we can address? Or were you merely talking about the framework before when you talked about that's really a question? Well, that argument is essentially an argument that the board failed to follow its own precedent. Right. Suppose he's wrong about what Aragon says. But suppose Aragon did set a rule that said you can't consider police reports and that so he would essentially be arguing that the board didn't follow its own precedent. As I've understood that, that's always a classic abuse of discretion. In other words, if the board doesn't follow its own precedent, that's always been considered to be an abuse of discretion. Now, the parties file. Well, the government filed its answering brief before the Supreme Court's recent decision in Patel. So we didn't really discuss it in our brief because it didn't exist yet. But Patel, it seems to me it talks about the discretionary bar. The discretionary bar precludes the court from reviewing. The exact language is any judgment regarding the granting of among certain forms of belief, adjustment of status. It seems to me that if an immigration judge is making a finding that I'm going to I'm going to have evidence that that's any judgment regarding the granting of relief. Right. And the Supreme Court, I think from Patel, it should be pretty apparent, has said that that's a very broad provision. Right. They said any judgment means a judgment of whatever kind. Right. And regarding the granting of relief, I mean, that would certainly relate to the granting of adjustment of status. So whether or not that's a question of law, if the classic abuse of discretion argument is that the board didn't follow its own precedent. So I'm not sure how that would get converted to a question of law. There is some support for the petition for the notion that it would be a question of law. I think the Second Circuit or Guetta case would support that. But after Patel, I'm not sure that it's something the court would have jurisdiction. Then what would be? Just spin it out for a second. So if I'm understanding you in an instance like this, there'd be nothing for us to review. Yes, I think that that I mean, Patel certainly. We would just say we we we would have to say after Patel we have no jurisdiction. Yes, I think so. But there is actually a case that half dives into this. It's cited in our brief. It's one of the cases that supports the government's position on the consideration of the reports. It's the First Circuit's decision in Arias-Maniah. They sort of talk about that this is not an easy question as to whether this is actually a question of law. And so what they did is they sidestepped it. They said, well, even assuming jurisdiction, we can easily repulse the argument on the merits. And that's what they did. And I think the court can probably do the same thing in this case. Right. So even if you even if it's a question as to whether this implicates an actual question of law, then it wouldn't really matter because, again, the cases that petitioners relying on don't say what he's claiming. They say they don't create a rule that the police reports can't be considered or that they're distinguishable because of the corroboration and all the different points we've already discussed. So I suppose it's possible to sidestep the question in the same way that the First Circuit did. But the First Circuit does seem to acknowledge this maybe isn't so cut and dry. And it's certainly not cut and dry after Patel. Right. Patel seems I think most people after Patel would think, OK, maybe this this jurisdictional provision is a little bit broader than we thought it originally was. So I guess that's that would be my answer to that question. But I think arguably a complete dismissal is the appropriate course, because if you're arguing that the board didn't follow its own precedent, that's always a classic abuse of discretion argument. Right. So now the petitioner talked a lot about about cases like Pickering and McIntyre's and Pinho. That's really conflating two different issues. Those are cases that dealt with eligibility for relief, not discretionary, not whether relief was warranted as a matter of discretion. So that was when those cases implicate cases where somebody is disqualified from relief at the outset. And so when we're talking, you know, so Pickering and the difference between substantive versus rehabilitative or ameliorative relief, that's just something that's not applicable in the discretionary calculus. The discretionary calculus, again, is something that is within the broad discretion of the attorney general. And certainly I think it is relatively well established that the immigration judge is permitted to consider evidence of prior bad conduct. I mean, that should be really a point that can't really be in dispute. Every court has has basically held that. I know the petitioner has. Oh, I see I'm out of time unless there are any further questions. Well. Why don't you finish your point? Oh, I was just going to say the final point that petitioner made, he sort of made a general due process argument. But this is, of course, an adjustment of status. Adjustment of status is a discretionary form of relief and doesn't implicate a constitutionally protected liberty interest. So for that reason, he doesn't have a viable due process claim. So unless there are any further questions from the court, maybe just wait. OK, sure. We were talking about the Yankees, of course. Did they win last night? We'd like you. I'm a Phillies fan myself. I know. I know you are. You know, I have a clerk who is, too. I do, too. Yeah. But we also chat about the Eagles. Bly, something or other. Right. Anyway, we just debate the law all day. Right. We'd like you to, after this brief rest, we'd like you and your colleague to brief us on Patel and its implications with regard to this case. Today's Monday, would a week be enough time for you to do that? Yes, Your Honor. Great. So just simultaneous submissions, if you would. And we'd enjoy reading that. OK. How much space would you like? Five. Whatever your honors feel is appropriate. Two, two pages. I might need a little more than two pages. We'll give you five single space. You know, we'll see how tight you can get it in on the page. OK. All right. Thank you. Thank you so much. Thank you for your time, Your Honor. Of course. Thank you. And we'll hear rebuttal now, please. Thank you. All right. Well, this is a curveball, but are you familiar with Patel? And can you respond to your adversary? Yes. So I am. If I'm understanding him correctly, right. The application of Patel would mean that essentially. We we we would have no jurisdiction. Yes, Your Honor. I'm prepared to discuss that. So in the majority of the cases that we've heard, the majority opinion written by Justice Barrett, the question presented was whether the discretionary relief bar of INA 242 A to B precludes judicial review of factual findings that underlay a denial of discretionary relief. Now, the interpretation of Patel that respondent is putting forth today would have major implications. And really, it's interpreting Patel much more broadly than it does. Patel is clearly a decision that is limited to factual findings. And the court repeatedly notes throughout the majority opinion that they retain jurisdiction to review constitutional claims and or questions of law under INA 242 A to B, 8 U.S.C. 1252 A to B, and that this qualification does not preserve questions of fact. I think it's particularly important to note what was on review in Patel. Patel had applied for adjustment of status, but while his adjustment application was pending, he applied for a Georgia driver's license. And there was a section about he had to indicate a check a box about his status. He checked the box noting citizen. And before USCIS, he said that, yes, he checked the box, but he didn't intend to check the box. It was an accident that he didn't intend to misrepresent his status. The USCIS determined that he was not credible and therefore they denied his adjustment application. He was put in removal proceedings, applied for adjustment again. The same factual question came forth for the adjustment application before the IJ. Did he intend to misrepresent his status on the Georgia driver's license application is a factual question. Patel and his attorneys never tried to argue otherwise. They were always very clear. Yes, this is a factual question, but their argument before the Supreme Court was that a discretionary bar under INA 242 A2B only applies to the ultimate discretionary determination. Yes or no on relief. And in fact, the government, it was in agreement with Patel and his attorneys. They had the same position. That's why the court appointed Amicus Curia to put forward another position because the court didn't agree with either the petitioner or the government who were in agreement. And the court ultimately agreed with the Amicus Curia that the discretionary bar applies not only to the ultimate discretionary question of whether or not to grant relief, but also to any related judgment. And so that so let me ask you a question that I get it. I think let's put the question of expungement to the side for a moment. Right. So Araguin says in a non-conviction instance, right. You want corroboration as well. Right. So is your argument that. Well, first of all, can we review corrupt the question of is there corroboration? And number two, if we can, is that a mixed question of law and fact or is it merely a question of fact? If it's a question of fact, it would seem that that would fall within the ambit of Patel and we'd be precluded from doing that. If it's a mixed question of fact and law, then it would seem it would be an abuse of discretion. But a standard is what I'm talking about, obviously. So what your honor, what we're arguing is that the issue here is is not specifically the corroboration and or the weight to be given to it and or the role of the corroboration and discretionary analysis. Our question is a strictly legal question is whether or not documents from a criminal case that was dismissed and expunged is admissible. And the question of the admissibility of evidence is a strictly legal question. But don't we then get into the fact that the federal rules of evidence don't apply and that that the standard before the Immigration Board is is the evidence probative and fundamentally fair? And is that not then a matter of discretion as opposed to a matter of law? Your honor, Judge Roth, we recognize that the federal rules of evidence and the federal rules of civil procedure do not apply to federal removal proceedings. That is not disputed. However, that the removal proceedings are still subject to the due process clause of the Fifth Amendment. And although the rules of evidence are not applicable to immigration proceedings, proceedings still must be conducted in accordance with due process standards of fundamental fairness. I'm quoting directly from a Ninth Circuit decision, Hamdan v. Holder 603 F3D 536 at 5545. And so we would argue that although the federal rules of evidence do not apply, we're I'm directing the court to these decisions that are based on the federal rules of evidence. I'm not saying that it applies because the federal rules apply. They don't. What I'm saying is that the analysis, the factors that are considered in these decisions and the legal principles that are considered, these are not just decisions that are being made based on the rules of evidence because it's not an automatic when in the cases where they said that the that expunged records are protected data under federal rule of civil procedure 45. That wasn't an automatic recognition. Rather, the court considered the seven factors, the seven so-called pansy factors. And so it wasn't automatic. And one factor in particular that was important that could change from case to case is who is asserting the privilege? Is it the state or is it the individual? Because there was another case that was cited by the government in their response brief where they noted that the court and it was another district court decision where they let the expunged information in. But in that case, the entity that was seeking the evidentiary privilege was not an individual. It was the state, because in that case it was a civil litigation against the state of Pennsylvania because it was a foster child was put in a foster home, was sexually molested in the foster home. So the mother of the child sued the state of Pennsylvania, attempted to get the records in regards to the sexual misconduct. And the state of Pennsylvania was then hiding behind the CHRIA to say that we don't have to provide these records because you don't have access to them. And the court ruled no, because it's one thing for an individual to be asserting the CHRIA to protect their fundamental liberty interest or their privacy interests or what have you. It's a completely different situation when the state is trying to use a law intended to protect the individual to allow the state to escape culpability for abuse against individuals. And that's a particular factor. So it's not an automatic thing. And what I'm saying is I'm directing the court to these cases as showing that there is a basis in the federal common law that this is an evidentiary privilege which could be recognized. So Judge Greenaway, contrary to your statement that we are putting forward a hard line on expungements, that no expungements can be considered, I want to clarify that the expungement is a hard line that can never be considered. In fact, we're not asking that at all. We are only asking that in cases where there is no conviction and there never has been a conviction. So which is this case. Roldan dealt with an expungement for a conviction. The immigrant, the applicant had either been found guilty after a trial or they pled guilty. And then later, that conviction is expunged. Roldan said under IRA-IRA, that's still considered a conviction. We're dealing with the specific set of cases where there never was any conviction and that's expunged. So that, I would, and it's not even automatic because we're proposing that with this federal common law, you have to consider it case by case to look at who's asserting the privilege and look at these factors, whether or not it should be recognized. So it's much more circumstance specific. But if I'm understanding your argument, that would mean conduct occurs in both instances with a conviction and expungement and without a conviction and expungement. The same conduct happens in one case. And the only thing that the that the IJ has to look at is bad character and unreliability. In one case, we're going to look at that bad conduct. In the other case, we're not going to look at the bad that that bad conduct. I don't need an exegesis now. I just need is do I have your argument right? Yes, Your Honor. Thank you. Thank you both very much. Thank you. A very interesting argument.